IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

BENTON DIVISION

| | | |
|---|---|---|
| ROMELL C. STEVENS,<br>    Plaintiff,<br><br>    V.<br><br>BENNY VICK, SHERIFF OF WILLIAMSON COUNTY; WILLIAMSON COUNTY OFFICIALS; CHIEF FERRELL, SUPERINTENDENT OF WILLIAMSON COUNTY JAIL; DERICK BAKER, WILLIAMSON COUNTY JAIL CORRECTIONAL OFFICER; SERGEANT ETHERTON, WILLIAMSON COUNTY JAIL OFFICER; SERGEANT CRAWSON, WILLIAMSON COUNTY JAIL OFFICER; JOGENDRA CHHABRA, MEDICAL DOCTOR AND EMPLOYEE OF HEALTH PROFESSIONALS, LTD; MARILYN ANN REYNOLDS, NURSE AND EMPLOYEE OF HEALTH PROFESSIONALS, LTD; OWNER OR CHIEF EXECUTIVE OF HEALTH PROFESSIONALS, LTD., all individually and in their official capacities, Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION<br><br>NO: <u>22-1951-JPG</u><br>(To be completed by clerk)<br><br><br>COMPLAINT |

Romell C. Stevens, proceeding pro-se at this initial stage, hereby files this Complaint under 42 U.S.C. §1983 for substantial Constitutional deprivations Plaintiff experienced while in custody of Williamson County from May 7, 2020 through April 1, 2021. Plaintiff seeks a Jury Trial and monetary damages.

# I. JURISDICTION AND VENUE

1. This is a civil action authorized by 42 U.S.C. §1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States and applicable law. The Court has jurisdiction under 28 U.S.C. §1331 and §1331(a)(3). Plaintiff seeks declatory relief pursuant to 28 U.S.C. § 2201 and §2202. A Jury Trial is demanded and monetary damages are being sought.

2. The Southern District of Illinois is an appropriate venue under 28 U.S.C. §1391(b)(2) because it is where the events giving rise to this complaint occurred.

# II. PLAINTIFF

3. Plaintiff Romell C. Stevens was at all times mentioned herein a pretrial detainee being held at Williamson County Jail (WCJ), in the state of Illinois. He is currently confined at Butner Federal Correctional Institution 2, in Butner, North Carolina.

# III. DEFENDANTS

4. Benny Vick, Sheriff of Williamson County, is legally responsible for the operation of WCJ and for the welfare of all inmates being held at WCJ.

5. Williamson County Officials, including Benny Vick, represent Williamson County in operating WCJ and ultimately make determinations that impact the welfare of inmates in custody of the County at WCJ such as contracting medical providers and providing funding for ensuring the inmates have appropriate and Constitutional confinement.

6. Chief Ferrell is superintendent of WCJ and is legally responsible for the operation of WCJ and for the welfare of all the inmates.

7. Derick Baker, Correctional Officer (C/o) at WCJ is legally responsible for the health and wellbeing of the inmates he is assigned to oversee.

8. Sergeant Etherton is in a leadership position at WCJ and is legally responsible for the health and wellbeing of the inmates being held at WCJ and is additionally responsible for other C/os following standard operating procedures, and all appropriate procedures.

9. Sergeant Crawson is in a leadership position at WCJ and is legally responsible for the health and welfare of the inmates being held at WCJ and is additionally responsible for other C/o's following standard operating procedures, and all appropriate procedures.

10. Jogendra Chhabra, M.D., is an employee of Health Professionals, LTD, (HPL), and is contractually established with WCJ to provide medical care for all inmates in the custody of WCJ.

11. Marilyn Ann Reynolds (Nurse Reynolds), is an employee of HPL, and is contractually established with WCJ under the direction of Dr. Chhabra to provide all appropriate medical care to the inmates in custody of WCJ.

12. Owner or Chief Executive of Health Professionals, LTD, is under contract with WCJ and Williamson County to provide medical care to inmates in custody of Williamson County.

3

# IV. FACTS

13. Plaintiff was booked into WCJ on May 7, 2020. He had a health screening with Nurse Reynolds under direction of Dr. Chhabra wherein he informed Nurse Reynolds his present doctor prescribed medications were 40mg Lisinopril, Atorvastatin, and Baby Aspirin. After this screening, Nurse Reynolds and Dr. Chhabra abruptly changed Plaintiffs prescription of Lisinopril to 20mg and did not provide trovastatin or Baby Aspirin. No explanation of the changed Lisinopril prescription or the discontinuance of Trovastatin or Baby Aspirin was provided to Plaintiff.

14. Throughout June and July of 2020, Plaintiff informed the medical department at WCJ that he was in need of treatment for an extremely severe progressive shoulder injury that was causing daily and constant excrutiating pain. The shoulder injury included extremely serious pain, dislocations, and torn ligaments and tendons. Both Dr. Chhabra and Nurse Reynolds were advised he was in extreme pain and they both withheld appropriate treatment. Dr. Chhabra advised plaintiff at one point a shoulder sling was ordered to help alleviate the pain; however, it was never provided. C/o Baker and Sgt. Etherton and Crawson were aware of the severe shoulder pain and took no action to help resolve the extreme pain Plaintiff was in which continued through April of 2021. (See Exhibit A and B). A response by the Sergeant was, "The medical department is contractual and is not able to be grieved," on August 4, 2020. A second Grievance (Ex. B), was responded to by Administration which stated, "The medical staff are the professionals and we will follow their direction concerning Medical treatment." It further noted, "You were issued a medical request form on 08/07/2020 by Sgt. Etherton. Fill out the form and turn it in." Plaintiff followed this direction as he had

4

previously, but it failed to resolve the medical issue and left him in daily excruciating pain from the shoulder injury. Plaintiff felt extreme anxiety, mental suffering, and discomfort from the ongoing pain and refusal of Dr. Chhabra and Nurse Reynolds to effectively treat his shoulder injury, and the inability to effectively grieve the mistreatment for appropriate corrective measures.

15. WCJ, under the direction of Sheriff Vick and Chief Ferrell failed to implement proper safety measures to protect inmates from the spread of COVID-19 which ultimately caused Plaintiff to contract the virus in December of 2020. Prior to this time, a federal injunction was NOT issued because the government represented that WCJ was implementing safety measures recommended by the CDC. Despite this, no safety measures were taken as the inmates were provided no masks, no hand sanitizer, no anti-bacterial soap, no effective cleaning materials, no proper social distancing, and no prepared medical response to an active breakout of COVID-19. Williamson County was fully aware of the risk to incarcerated individuals and simple safety measures were not put into place to protect the health and welfare of the inmates in their custody.

16. Plaintiff was tested for COVID-19 by Nurse Reynolds on Dec. 4, 2020 along with other inmates within the same unit. Nurse Reynolds failed to wear a mask or gloves while administering the test via a nasal swab. Plaintiff tested positive for COVID-19 and was thereafter confined to a cell with another inmate that tested positive for COVID-19 as well.

17. Sheriff Vicks and Chief Ferrell implemented a policy that kept inmates with COVID-19 confined to their cells and Plaintiff was not allowed a shower or phone call for ten days following his positive test for COVID-19.

18. Plaintiff's medical conditions progressively and quickly deteriorated after his diagnosis of COVID-19. It is the belief of the Plaintiff that the failure of Dr. Chhabra and Nurse Reynolds to provide his doctor prescribed medications of 40mg Lisinopril, Atorvastatin, and Baby Aspirin further exacerbated his COVID-19 illness as his essential Hypertension was not properly controlled. By December 10, 2020, it was known by Dr. Chhabra, Nurse Reynolds, Chief Ferrell, C/o Baker, Sgt. Etherton and Crawson, and others that Plaintiff was severely ill and in very bad shape. He complained of muscle aches, persistent coughing, trouble breathing, and severe headaches. The only treatment provided up to this point was cold-tablets, and tylenol.

19. By December 13, 2020, Plaintiff was so sick that he couldn't eat solid food without vomiting and his urine had blood in it. He was in severe emotional distress and worried for his life. He was placed on a liquid diet and given gatorade to drink to treat the blood in his urine. C/o Baker witnessed Plaintiff urinate in a cup to prove there was blood in his urine and C/o Baker advised him that Nurse Reynolds was told and said that Heartland Hospital is not accepting positive COVID-19 patients. Nurse Reynolds also advised she would have Plaintiff's urine tested. It is Plaintiff's belief that Nurse Reynolds never had his urine tested nor contacted Heartland Hospital with his medical emergency. All parties

6

to this suit are believed to have had knowledge that Plaintiff was in severe emotional distress due to his grave COVID-19 infection and all failed to seek emergency medical care for Plaintiff to help save his life, including Dr. Chhabra.

20. On December 15, 2020, Plaintiff, after having defecated on himself, was finally allowed out of his cell for a shower and phone call. He contacted a family friend, Kathy Dawson, who in turn contacted Terry M. Green and that led to Plaintiff being taken the same day to the Heartland Regional Medical Center Emergency Room in Marion, IL. It is the belief of the Plaintiff that without the intervention of Kathy Dawson, all parties within this suit would have left Plaintiff in his cell to die of his medical conditions. The delayed emergency medical care had devastating impacts to Plaintiff's overall health and ability to recover from his illnesses.

21. Upon entry to Heartland E.R., Plaintiff was diagnosed with numerous conditions including COVID-19, Double Pneumonia, Rhabdomyalysis, Severe Hypertension, liver failure, Kidney failure, and microcytic anemia. Upon arrival to the E.R., Plaintiff was given a blood pressure check which indicated 206/165 despite many previous manual readings given by Nurse Reynolds in which she advised Plaintiff's blood pressure was fine and told him that jail was doing good for him. Plaintiff's creatinine phosphokinase was above 14,000 upon entry to the E.R. on December 15, 2020. E.R. Doctors Gladstone and Prokopiv advised him the cold-tablets were antihistimines and worsened his condition. Upon discharge from Heartland Hospital E.R., the following diagnoses were resolved; Acute hypoxemic respiratory failure, Hypokalemia, Serum Creatine Raised, high troponin level, Acute injury of

7

Kidney, abdominal pain, and Hyponatremia. The following diagnoses were still present upon discharge; leukocytosis, hypocalcemia, hyperlipidemia, microcytic anemia, muscle weakness, rhabdomyolysis, liver enzymes abnormal, Pnemonia, COVID-19, and essential hypertension. (See Exhibit C, Heartland Hospital Discharge Summary).

22. Upon discharge from the E.R. on December 22, 2020, Plaintiff was prescribed new medication to control his hypertension and was advised by Dr. Gladstone that WCJ was contacted directly to ensure the new medication was administered and he also advised Plaintiff that Nurse Reynolds was advised of the need to check his blood pressure daily for seven days to ensure the new medication was effective. Plaintiff's blood pressure was not checked as Dr. Gladstone advised him that it should be. Nurse Reynolds did not check his blood pressure until eight days after his return from Heartland E.R. Plaintiff's discharge prescription medication including Atorvastatin, Clonidine HCL, Hydrochlorothiazide, and Metoprolol Succinate XL were all abruptly stopped upon his return to WCJ. He did remain only on the 40 mg dose of Lisinopril and the typing down dose of prednisone.

23. On Dec. 22, 2020, when Plaintiff returned to WCJ, despite the extreme medical conditions he overcame and was still suffering with, he was placed in an upper bunk which his muscle weakness prevented him from climbing up to. This forced Plaintiff to sleep on the floor until Dec. 30, 2020 when he was finally moved to a medical cell. Rhabdomyolysis is known to cause "weakness in your legs, arms, or lower back." (See Exhibit D). Plaintiff made numerous complaints to WCJ

Staff, including Sergeant Etherton and Crawson about the need for a lower bunk. Upon his first meeting with Nurse Reynolds upon his return from Heartland Hospital, he informed her of chest-pains, muscle and joint aches, head-aches, and dizziness, all of which could have been eased by being placed in a lower bunk or medical cell immediately after returning from the E.R.

24. Nurse Reynolds would give manual blood pressure checks to Plaintiff while he was at WCJ and she would report to him that his blood pressure was fine and if the electronic blood pressure machine was used, Nurse Reynolds would clear the readings prior to him being able to see the results. Medical records have been requested on multiple occasions from WCJ including requests by the Bureau of Prisons (BOP) for the time that Plaintiff was there, and no medical records have been provided in response to these requests.

25. Dr. Chhabra and Nurse Reynolds retaliated against Plaintiff for filing medical complaints that stated he was receiving inadequate medical care and for Kathy Dawson calling without the knowledge of Plaintiff to complain to WCJ about his inadequate medical care. The retaliation consisted of a practice by Williamson County, through Sheriff Vick and Chief Ferrell implicitly punishing Plaintiff by placing him in a suicide cell for isolation and prevents phone calls and association with family. Plaintiff was punished in this manner the first time when he filled out a medical complaint form on Jan. 4, 2021. The second time was on Jan. 15, 2021 after again filling out a medical complaint form for severe chest pain and headaches. Plaintiff was left in the suicide cell for five days which is referred to as "the hole" at WCJ. These retaliatory efforts prevented Plaintiff from filing further medical complaints for fear of being sent back

to the hole.

26. On April 1, 2021, Plaintiff was transferred to Jackson County Jail in Murphysboro, IL, in hopes of adequate medical treatment. Despite Nurse Reynold's assurances that Plaintiff's blood pressure readings were fine, on April 3, 2021, he was given a blood pressure check by the nurse at Jackson County Jail and had a reading so severe that an ambulance was called and he was rushed to the Emergency Room at St. Joseph's hospital and was admitted for four days to resolve the blood-pressure emergency which was at stroke level. The quoted exam states: "Called Dr. Kupferer about B/P. Dr. states inmate needs to be taken to E.R. for hypertensive emergency..." (See Exhibit E). It is the belief of Plaintiff that Dr. Chhabra and Nurse Reynolds failed to provide adequate medical care by stopping the medication prescribed by Heartland Hospital which contributed to the hypertensive emergency on April 3, 2021. It is also the belief of the Plaintiff that the practice of WCJ to punish inmates for filing medical complaints contributed to the hypertensive emergency on April 3, 2021 which is controlled by Williamson County through Sheriff Vick and Chief Ferrell.

27. Plaintiff has had numerous debilitating life-long illnesses that have set in since his horrible medical treatment at WCJ. First, he never previously had kidney problems but now has only 40% kidney function. Second, he now suffers from diabetes onset only after the extreme sickness experienced at WCJ which had delayed treatment for Rhabdomyolysis which is known to damage kidneys and other organs. (Ex. D-1). Although Plaintiff's

liver function resolved, it likely contributed to the diabetes and reduced kidney function. Plaintiff has also been diagnosed with an enlarged heart which the hypertension that was inadequately treated by Dr. Chhabra and Nurse Reynolds likely contributed to. The practice of WCJ relying solely on the "professional" medical advice from employees of Health Professionals, LTD, has proven devastating for Plaintiff on multiple occasions and now has life-long complications he must deal with. The policies of HPL that guide Dr. Chhabra and Nurse Reynolds must be in question as any layperson can see how inept the medical treatment was for Plaintiff.

## V. LEGAL CLAIMS

28. Plaintiff is pro-se but will be seeking Counsel himself and from the Court if necessary as his incarceration limits his ability to interact with medical professionals that is required to move forward with this Complaint. Although he will attempt to lay out the appropriate legal claims, they may not encompass all of the possible claims which Counsel would also be able to cure.

29. Sheriff Vick, Chief Ferrell, and Williamson County Officials, have all been negligent in their duty to ensure the welfare of Plaintiff while he was under their stewardship. By failing to provide effective remedies to medical complaints, they created a policy, custom, or practice of ignoring medical complaints with full reliance on the choices made by contracted medical providers. As proven by the cruel and inept medical treatment of Plaintiff by HPL, the contracted medical provider for WCJ, this policy, practice, or custom has resulted with Dr. Chhabra and Nurse Reynolds to operate with carte blanche authority with medical decisions that result in Constitutional deprivations. A policy, practice, or custom of not being able to grieve medical treatment can not be used to shield Sheriff Vick, Chief Ferrell, and Williamson County Officials from liability as it is willfull blindness. Further, Williamson County, Sheriff Vick and Chief Ferrell have been on notice that HPL has provided unconstitutional medical services in the past which has resulted in lawsuits and devastating medical consequences. As only a couple examples, Bill Allen brought a suit against Williamson County, Nurse Marilyn and Benny Vick among others in 2014 for inadequate

medical care and failure to provide prescription medication for severe hypertension. In 2012, Jadyn Currie brought a suit on behalf of Phillip Okoro who died in custody of Williamson County against the same parties, for lack of appropriate medical care. These cases prove Williamson County, Sheriff Vick, and Chief Ferrell were on notice that there must be a way for an inmate to grieve inadequate medical treatment to prevent the severe consequences that Plaintiff is now facing.

Williamson County, Sheriff Vick, and Chief Ferrell failed to implement proper safety measures to protect inmates from COVID-19, and therefore contributed to Plaintiff's COVID-19 infection chances, and directly resulted in his injuries. In addition the policy to quarantine inmates in their cell for 10 days if positive for COVID-19 with no showers or phone calls was unconstitutional. As indicated, a previous injunction was not issued in May of 2020 by this Court as the government represented Williamson County, through Sheriff Vick and Chief Ferrell were implementing appropriate COVID-19 safety measures and this was clearly untrue. Williamson County, Chief Ferrell, and Sheriff Vick all had a duty to provide Plaintiff with a relatively safe environment to control the spread of COVID-19 and not even the simple ones of masks, cleaning supplies, hand sanitizer, or anti-bacterial soap was provided. This was deliberately indifferent to Plaintiff's right to adequate protection from the spread of COVID-19.

In addition to Williamson County officials, Sheriff Vick, and Chief Ferrell being responsible for policies with contracted medical providers that shielded them from liability through willful blindness and failing to provide adequate safety measures during COVID-19 active community spread, the parties were aware that their policy of not allowing medical grievances contributed directly to the emotional distress that was

13

experienced by Plaintiff. The Facts Fully support a claim of negligent infliction of emotional distress.

30. C/o Baker witnessed Plaintiff in severe emotional distress and witnessed Plaintiff urinate in a cup that clearly had blood in it. C/o Baker was directly responsible for the safety and welfare of the Plaintiff during his shoulder injury and COVID-19 Sickness and knew that he needed medical attention beyond what was being provided by WCJ. C/o Baker's immediate intervention to call 911 would have given Plaintiff immediate emergency medical care and he would have had less of a devastating impact on his health and well-being. Instead, C/o Baker was deliberately indifferent to the serious medical needs of Plaintiff.

31. Sgt. Etherton and Crawson were both fully aware of Plaintiff's extreme pain and suffering from his shoulder injury and were deliberately indifferent to his emotional distress. Both were aware that Plaintiff was literally on his death bed during his COVID-19 infection and were responsible for his safety and well-being. The failure of both to call 911 to report the medical emergencies that Plaintiff experienced was deliberately indifferent to his suffering, which contributed to his emotional distress that was negligently inflicted by Sgt. Etherton and Crawson.

32. Dr. Chhabra, Nurse Reynolds, and HPL, all provided objectively unreasonable medical care for Plaintiff and were deliberately indifferent to his needed healthcare and pain and suffering in violation of his Constitutional rights under the Fourteenth Amendment. Namely: 1) The refusal to provide Plaintiff doctor prescribed medications upon arrival

14

at WCJ was objectively unreasonable treatment for his hypertension and deliberately indifferent to his needed medications which contributed directly to exacerbating his COVID-19 illness and damage to internal organs normally experienced with hypertension; 2) The failure to treat Plaintiff's extensive shoulder injury over months which caused extensive pain and suffering to Plaintiff was objectively unreasonable and deliberately indifferent to his medical needs; 3) The Failure of all three to effectively monitor his hypertension by providing regular blood-pressure checks that were accurate was objectively unreas-onable and deliberately indifferent to his serious medical condition; 4) The Failure of Dr. Chhabra, Nurse Reynolds, and HPL to provide Plaintiff with adequate medical treatment while he was sick with COVID-19 and emergency medical treatment when it was readily apparent it was needed was objectively unreasonable and deliberately indifferent to Plaintiff's life and welfare; 5) The Failure of the three parties to provide emergency medical care when he was unable to eat and had blood in his urine was objectively unreasonable and deliberately indifferent to Plaintiff's medical needs; 6) Upon Plaintiff returning from the Heartland Hospital E.R. for emergency care for numerous health conditions, many caused or exacerbated by the inadequate medical treatment by these three parties, the failure of Dr. Chhabra, Nurse Reynolds, and HPL to provide the newly prescribed medications by the Heartland Hospital E.R., and monitor Plaintiff's blood pressure daily as requested was outrageous conduct, beyond objectively unreasonable, and deliberately indifferent to his medical care; 7) Dr. Chhabra, Nurse Reynolds, and HPL, having direct knowledge of the severe medical conditions he overcame and some he was still experiencing, were objectively unreasonable in allowing Plaintiff in an upper bunk which

15

Forced him to sleep on the floor for over a week, and this was deliberately indifferent to his medical needs; 8) Retaliation against Plaintiff by all parties in this suit for filing valid and relevant medical complaints was outrageous conduct, objectively unreasonable, and deliberately indifferent to his medical needs; All claims highlighted above support a medical malpractice claim and a claim of negligence as HPL, Dr. Chhabra, and Nurse Reynolds owed Plaintiff a duty of care as he was reliant solely on them for proper medical care; all breached this duty of care, and all of this contributed to Plaintiff's devastating injuries and almost cost him his life. The policies and procedures in place by HPL are woefully inadequate if stopping medications is an acceptable practice. Plaintiff's injuries in fact are proven by the necessary treatment first at Heartland Hospital E.R. and second at St. Joseph's Hospital E.R. after the horrid medical care by HPL, Dr. Chhabra, and Nurse Reynolds. The challenged conduct of all three completely denied Plaintiff adequate medical care and all acted purposely, knowingly, and recklessly when considering the consequences of Plaintiff's care and all were deliberately indifferent to these consequences.

33. HPL, Dr. Chhabra, and Nurse Reynolds all engaged in conduct that caused severe intentional and negligent emotional distress to Plaintiff. Both Dr. Chhabra and Nurse Reynolds witnessed Plaintiff in emotional distress from his shoulder injury and his COVID-19 sickness. The policies of HPL prevented the adequate medical treatment that would have prevented Plaintiff's severe emotional distress. As proven by hospital records, Plaintiff was severly sick with organs shutting down and there is no question this caused Plaintiff intentional distress. Plaintiff's injuries in fact were caused by the breach of duty by HPL, Dr. Chhabra,

16

and Nurse Reynolds which fully supports negligent infliction of emotional distress at the very least.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this court enter judgment:

34. Granting Plaintiff a declaration that the acts and omissions described herein violated his rights under the Constitution and the laws of the United States, and

35. Granting Plaintiff Compensatory damages in the amount of $75,000.00 against each defendant, jointly and severally

36. Granting Plaintiff Compensatory damages for C/o Baker only in the amount of $25,000.00

37. Punitive damages in the amount of $50,000.00 against each defendant and the amount of $20,000.00 against C/o Baker.

38. A jury trial on all issues triable by jury

39. Plaintiff's Costs in this suit

40. Any additional relief this Court deems just, proper, and equitable.

-17-

Dated: August 8th, 2022

Respectfully Submitted,


Romell C. Stevens
Romell C. Stevens # 10572-025
Butner Medium II F.C.I.
P.O. Box 1500
Butner, NC 27509

VERIFICATION:

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Butner, North Carolina on


Romell C. Stevens
Romell C. Stevens

## Williamson County Jail

## Inmate Grievance/complaint form

**Step: #** 2    **/Date &Time** 8/4/2020 @ 2030    *For Officer to fill out at time this

**form is requested and given to inmate***

**Inmate Name:** Romell Stevens S    **Block** C-103    **Date:** 8-4-20

**Complaint:**

Medical Staff Refusing to treat Progressive Shoulder.
Injury - NEED MRI, for pain + dislocations
Torn ligaments + tendon - Severe pain + dislocations
daily. Made Several Attempts for treatment - Medical
Refuse. Further refusal of treatment is Cruel +
Unusal Punishment - 8th Amendment Violation -

**Inmate Signature:** Romell Stevens

**Officer's action:** Referred to Sgt.

---

**Officer Signature, Date & Time:*** //wc    WC100    8-5-2020

**Supervisor's action:** The medical department is contractual and is not able to be
grieved. If you have a medical issue a medical request form will
be given to you for you to complete.

**Supervisor Signature, Date & Time *** wc76   8/5/2020 @ 10:15am

**Administration action:**

**Administration Signature:**

Exhibit A

Williamson County Jail

Inmate Grievance/complaint form

Step #4 /Date & Time: 8/6/20 @ 1730    *Officer is to fill out the time this
(Federal Inmate)    form is requested and given to inmate*

Inmate Name: ROMELL STEVENS  Wing C-103  Date 8-7-20

Complaint: "PAin !!! Dislocations of left shoulder !!! PAin
When I WAKE up, When I Sleep and even now AS I
Write !!! No doctor here, nor nurse has even examined me.
Relying on past ex-rays. to dianosis me. As "elective treatment"
I need an MRI, And surgery to stop painful dislocations.
Everyone in Unit has witness these painful bouts of dislocations.
This is Cruel + Unusal punishment + Deliberate Indifference.!!!
I AM REQuesting 1983 Civil Suit forms !.!!    Romell Stevens

Inmate Signature:

Officer's action: _____

_____
_____
_____
_____.

Officer Signature, Date & Time: _____

Supervisor's action: Picked up and passed to admin
_____
_____
_____
_____
_____.

Supervisor Signature, Date & Time: _____ CCU 8/7/20 @ 1145.

Administration Action:
 You must go through the medical staff at the jail while in custody of the Williamson
County Sheriff's office, Jail.  You were issued a medical request form on 08/07/20
by Sgt. Etherton.  Fill out the form and turn it in to see the medical staff, for medical treatment.
The medical staff are the professionals and we will follow their direction concerning
 Medical treatment.  You will need to request the 1983 civil suit form from your atty.

Administration Signature: _____

Exhibit B

HEARTLAND REGIONAL MEDICAL CENTER
PATIENT DISCHARGE SUMMARY REPORT

Page: 0001
Date: 12/22/20
Time: 10:06:22

Patient: STEVENS ROMELL C
Rm/Bed: 110 /A
Encounter#: 6604754
Admit Date: 12/15/2020
Height: 6 ft .00 in /182.88 cm (12/16/20 00:09)
Weight: 226 lbs 7.77 oz /102.732 kg (12/16/20 00:09)
Diagnosis: COVID-19 PNEUMONIA
Race: BLACK OR AFRICAN AMERICAN
Allergies: Morphine

DOB: 9/04/1963 (57 Y)
Physician: TUCKER GLADSTONE
History Num: 000623856
Discharge Date:
Pref Language: English
Sex: M
Ethnicity: NOT HISPANIC OR LATINO

## DISCHARGE MEDICATIONS:

### New Medications to Start Taking

CLONIDINE HCL - Take 0.1 MG BY MOUTH EVERY 12 HOURS. 30 tabs
Last dose given: Monday December 21, 2020 09:30 PM
Take next dose: Monday December 21, 2020 07:00 PM

*Taking off by "Nurse Reynolds" 10 day after discharge from Hosp.*

HYDROCHLOROTHIAZIDE - Take 25 MG BY MOUTH EVERY 24 HOURS. 30 tabs
Last dose given: Monday December 21, 2020 09:46 AM
Take next dose: Tuesday December 22, 2020 09:00 AM

METOPROLOL SUCCINATE XL - Take 100 MG BY MOUTH DAILY. Hold for systolic
blood pressure less than 110 or heart rate less than 60
(Also known as METOPROLOL SUCCINATE ER)
Last dose given: Monday December 21, 2020 09:46 AM
Take next dose: Monday December 21, 2020 07:00 PM

PREDNISONE ORAL TABLET 10 MG - Take 10 TAB ORALLY EVERY 24 HOURS. 4 tabs PO
for 3 days 3 tabs PO for 3 days2 tabs PO for 3 days 1 tab PO for three days
Take next dose: Tuesday December 22, 2020 09:00 AM
Printed prescription provided

### Continue Taking

Atorvastatin Calcium Oral Tablet 20 MG - Take 20 MG BY MOUTH AT BEDTIME.
Patient said they have not been giving him this at the correctional
facility for many months

*Not given by "Nurse Reynolds"*

Lisinopril Oral Tablet 40 MG - Take 40 MG BY MOUTH DAILY. Patient said they
have only been giving him 20 mg daily for the last several months but he
was supposed to be on 40 mg daily.

### Stop Taking

Aspirin 81 Oral Tablet Chewable 81 MG - 81 MG BY MOUTH DAILY. Patient said
they have not been giving him this at the correctional facility for many
months
Last dose given: Monday December 21, 2020 09:46 AM

Pyridium Oral Tablet 100 MG - 100 MG BY MOUTH DAILY. Patient said they have
not been giving him this at the correctional facility for many months

## DISCHARGE INSTRUCTIONS:

Continued

## Discharge Summary
### Heartland Regional Medical Center

| | | | |
|---|---|---|---|
| Name | Stevens, Romell C | Date of Service | Dec-22-2020 1755 |
| Attending | TUCKER GLADSTONE | Admitted | Dec-15-2020 |
| Primary | UNKNOWN PRIMARY CARE | Discharged | Dec-22-2020 |

| | |
|---|---|
| DOB | Sep-04-1963 (M) |
| Encounter | 6604754 |
| MRN | 623856 |

## Date of Admission

Admit Date: Dec-15-2020

## Date of Discharge

Date of discharge Dec-23-2020

## Allergies

Morphine - anxiety/incresed bp

## Chief Complaint

Shortness of breath

## Final Diagnoses

Leukocytosis

Hypocalcemia

Hyperlipidemia

Microcytic anemia

Muscle weakness

Rhabdomyolysis

Viral hepatitis C

Liver enzymes abnormal

Pneumonia

COVID-19

Essential hypertension

resolved
Acute hypoxemic respiratory failure Resolved Dec-20-2020

Hypokalemia Resolved Dec-19-2020

Serum creatinine raised Resolved Dec-18-2020

High troponin I level Resolved Dec-18-2020

Acute injury of kidney Resolved Dec-18-2020

Abdominal pain Resolved Dec-17-2020

Hyponatremia Resolved Dec-17-2020

chronic
Carcinoma of prostate

## Procedure(s) Performed

None

Exhibit C-1

## Discharge Summary

### Heartland Regional Medical Center

| | | | | |
|---|---|---|---|---|
| Name | Stevens, Romell C | Date of Service | Dec-22-2020 1755 | DOB | Sep-04-1963 (M) |
| Attending | TUCKER GLADSTONE | Admitted | Dec-15-2020 | Encounter | 6604754 |
| Primary | UNKNOWN PRIMARY CARE | Discharged | Dec-22-2020 | MRN | 623856 |

## Lab Results

Dec-22-2020 0413
Chemistry
  CPK 2654 (H)

## Imaging Results

Chest x-ray reported as viral pneumonia which can cover with a variety of infections non infectious process

## Functional Status*

No Functional Impairments

## Mental Status*

Normal Cognition

## Social History

tobacco use
  Unknown if Ever Smoked, 0 yrs
marital status
  Divorced

## Health Concerns

Leukocytosis
Hypocalcemia
Hyperlipidemia
Microcytic anemia
Muscle weakness
Rhabdomyolysis
Viral hepatitis C
Essential hypertension
Liver enzymes abnormal
Pneumonia
COVID-19
Carcinoma of prostate
Father Deceased Cirrhosis of liver @ 45  Cirrhosis of liver
Mother Deceased Malignant neoplastic disease @ 65  Malignant neoplastic disease

## Vital Signs

Dec-22-2020 0758
  T 97.5  HR 75  RR 10  BP 159 / 94 (H)  O2Sat 92

Dec-22-2020 0415
  T 98  HR 83  RR 17  BP 156 / 82  O2Sat 93

## PHYSICAL EXAM

GENERAL: alert, oriented, to place time and person, in moderate distress.

HEENT: head atraumatic normocephalic, extraocular muscles intact, pupils are equal and reactive to light and accommodation.

NECK: supple, there is no jugular venous distention, carotid bruit. There is no thyroid or cervical lymph nodes enlargement.

LUNGS:.
Diminished breath sounds, wheezes, crackles bilaterally.

CVS: S1-S2 are regular, there is no murmur, gallop, there is no point of maximal impulse displacement.

2 of 4

Exhibit C-2

## Discharge Summary

### Heartland Regional Medical Center

| | | | |
|---|---|---|---|
| Name | Stevens, Romell C | Date of Service | Dec-22-2020 1755 | DOB | Sep-04-1963 (M) |
| Attending | TUCKER GLADSTONE | Admitted | Dec-15-2020 | Encounter | 6604754 |
| Primary | UNKNOWN PRIMARY CARE | Discharged | Dec-22-2020 | MRN | 823856 |

ABDOMEN: Soft, nontender, nondistended, bowel sounds present.
There is no hepatosplenomegaly, costovertebral angle tenderness negative bilaterally.

EXTREMITIES: There is no pedal edema, joint swelling or tenderness. Peripheral pulses +2 and equal bilaterally.

CENTRAL NERVOUS SYSTEM:
Cranial nerves from 2-12 within normal limits, sensation intact, muscle power 5/5 bilaterally in upper and lower extremities, a deep tendon reflexes intact bilaterally.  There is no focal neurologic deficit.

## Hospital Course

This is aa 57-year-old male brought in from the prison with history of hypertension tension and prostate cancer status post radiation, who was recently diagnosed with the COVID-19 and came into the ER with chief complaint of generalized body ache, right upper quadrant abdominal pain since 2 days.
On arrival in the emergency room blood pressure 178/95 heart rate 118, respiration 24 per minutes, temperature 104° oxygenation 96%.
Level a Torrey workup reveal white blood cells 10.8 hemoglobin 13 hematocrit 40 platelets 259
And chemistry potassium 3.3 creatinine 1.30 for albumin 2.9 lactic acid 2.3 procalcitonin 0.44 troponin 0.057 urine analysis was negative

Creatinine phosphokinase was above 14,000
Patient was started on intravenous dexamethasone, Zosyn, vancomycin, xygen, respiratory therapy and IV fluid.
The patient has been established with the sepsis secondary to pneumonia, COVID-19 pneumonia possible sepsis, acute hypoxic respiratory failure secondary to pneumonia with PO2 66.6.
Abnormal liver function test, hypertension, prostate cancer.
 At the time of discharge patient condition improved his oxygen saturation is 96% without oxygen supplement, a CPK decreased from 14,000 down to 2000 patient denies muscle ache discomfort all over the body,

During hospitalization patient had elevated blood pressure and was started on hydrochlorothiazide 25 mg once a day oral, clonidine 0.1 mg oral twice a day and metoprolol 100 mg once a day.

The patient will be discharged back to the prison with typing Downs dose of prednisone and a new medication for blood pressure control

## Condition at Discharge

Stable

## Discharge Medications

Atorvastatin Calcium Oral Tablet 20 MG
Dose: 20 MG BY MOUTH AT BEDTIME
CLONIDINE HCL
Dose: 0.1 MG BY MOUTH EVERY 12 HOURS
HYDROCHLOROTHIAZIDE
Dose: 25 MG BY MOUTH EVERY 24 HOURS
Lisinopril Oral Tablet 40 MG
Dose: 40 MG BY MOUTH DAILY
METOPROLOL SUCCINATE XL
Dose: 100 MG BY MOUTH DAILY
predniSONE Oral Tablet 10 MG
Dose: 10 TAB ORALLY EVERY 24 HOURS

## Discharge Disposition

Discharge to home

## Discharge Instructions

Diet
    Cardiac
Activity

Exhibit C-3

## Discharge Summary

### Heartland Regional Medical Center

| | | | | |
|---|---|---|---|---|
| Name | Stevens, Romell C | Date of Service | Dec-22-2020 1755 | DOB Sep-04-1963 (M) |
| Attending | TUCKER GLADSTONE | Admitted | Dec-15-2020 | Encounter 6604764 |
| Primary | UNKNOWN PRIMARY CARE | Discharged | Dec-22-2020 | MRN 623856 |

As tolerated

**Follow up Appointments**
Follow-up with primary care physician in 1 week

## Primary Care Provider

UNKNOWN PRIMARY CARE PHY CHS

## Time Spent with Patient

Total number of minutes spent with patient (More than 30 min)

Electronically signed by PROKOPIV HALYNA MD on Dec-27-2020 2101

Exhibit C4

Exhibit D-1

## Rhabdomyolysis

**WHAT YOU NEED TO KNOW:**

**What is rhabdomyolysis?** Rhabdomyolysis is a condition where injured muscles release harmful substances into the bloodstream. These substances include potassium, phosphate, creatinine kinase, and myoglobin. Large amounts of these substances may damage your kidneys and other organs.

**What causes rhabdomyolysis?**

- **Conditions,** such as seizures, severe asthma, and infections. Excessive vomiting or diarrhea, diabetes, or problems of hyperthyroidism (thyroid storm) may also injure your muscles.

- **Temperature extremes,** such as hyperthermia (very high body temperature) or hypothermia (very low body temperature).

- **Extreme muscular activity,** such as running marathons, can cause muscle stress and injury.

- **Medicines or harmful substances,** such as antidepressants or cholesterol medicine may injury your muscles. An overdose of aspirin or diuretics may cause an electrolyte imbalance and muscle injury. Alcohol and illegal drugs such as amphetamines, opiates, ecstasy, and LSD can also cause muscle injury.

- **Trauma** to the muscles, such as a crushing injury, electrical shock, or severe burns, can cause rhabdomyolysis.

**What are the signs and symptoms of rhabdomyolysis?**

- Pain, swelling, bruising, or weakness in your legs, arms, or lower back

- Dark-colored urine, blood in the urine, or passing little or no urine at all

- Fast heartbeat

- Confusion or easy irritation

- Nausea and vomiting

- Trouble breathing

**How is rhabdomyolysis diagnosed?**



- **Blood and urine tests** may show damage to your kidneys and liver. These tests may also show which substances are released by your injured muscles.

- **A CT or MRI** may show the muscle injuries or changes. You may be given contrast liquid to help the muscles show up better in the pictures. Tell the healthcare provider if

Exhibit D-2

you have ever had an allergic reaction to contrast liquid. Do not enter the MRI room with anything metal. Metal can cause serious injury. Tell the healthcare provider if you have any metal in or on your body.

- **A biopsy** from your muscle may show which substances are being released. This can help healthcare providers plan your treatment.

## How is rhabdomyolysis treated?

- **Large amounts of IV fluid** help flush substances through your kidneys. Medicines may be added to the fluid to help flush out harmful substances and get rid of extra fluid. Medicines may also help reduce the acidity of your urine.

- **Dialysis** cleans your blood when your kidneys cannot. Extra water, chemicals, and waste products are removed from your blood by a dialyzer or dialysis machine. The dialysis machine does this by passing your blood through a special filter, then returning it back to you.

- **A blood transfusion** is when you are given whole or parts of blood through an IV. Blood is tested for diseases, such as hepatitis and HIV, to be sure it is safe.

- **Fasciotomy** is surgery to cut tissues that cover your muscles. This decreases pressure on blood vessels and nerves caused by swelling of the injured muscle.

## How can I manage my symptoms?

- **Drink liquids as directed.** Ask how much liquid to drink each day and which liquids are best for you. Drink more liquids if you are doing strenuous work, exercise, and if it is warm outside. Liquids help flush substances from your body.

- **Do not drink alcohol.** Heavy alcohol use may increase your risk for rhabdomyolysis.

## When should I contact my healthcare provider?

- You have questions or concerns about your condition or care.

## When should I seek immediate care or call 911?

*"Nurse Reynolds did not seek emergency care"*

- Your urine is dark or tea-colored or has blood in it. ← *"For 3 days I showed Nurse Reynolds"*

- You have pain, swelling, or weakness in your arms or legs that does not go away or gets worse.

- You are urinating less than usual or not able to urinate.

- You have chest pain.

- Your heart is beating faster than usual or has a strange rhythm.

## CARE AGREEMENT:

You have the right to help plan your care. Learn about your health condition and how it may be treated. Discuss treatment options with your healthcare providers to decide what care you want to receive. You always have the right to refuse treatment.

04/21/2022  13:20 BN
(FAX)6186872293                    P.016/024

Exhibit E

# JACKSON COUNTY JAIL
### Inmate History & Physical Exam

Temp 97.4

Name: Stevens, Romell    DOB: 9/4/63   Age: _____   Date: 4/3/21
Wt: 234 #  Ht: 6 0   B/P: 209/142   HR: 90   RR: _____   Race/Sex: B,M
                                        97%

Allergies: Morphine _____    Last Tetanus: _____

Current Medications: Lisinopril _____

Eyeglasses: (Yes) No  /  Contacts: Yes No  /  Dentures: Yes (No)  /  Partials: Yes (No)
Teeth in good repair? (Yes) No

                                                          Hep C
Tobacco: Yes (No)  How much? _____ ppd X _____ yr.  //  ~~STD O~~  Hepatitis X  ~~HIV O~~

Alcohol: (Yes) No  Type/Quantity: _____    Illicit Drug Use: Yes (No)

Name of Drugs: _____   Tattoos: (Yes) No  Location: Bilat hands, arms, chest face

PMH/Surgery/Accidents: Hypertension, COVID (Dec 2020), Rhabdomyolysis (GERD)
Prostate Cancer, Pneumonia, Broken-right arm, fingers
Ø suicide attempts      Females:  G ___ P ___ Ab ___ LMP

If i/m is <22 YO:  Have you ever received Special Education Services?  Yes  No  N/A

Tubersol TB Skin Test – Administration Lot: _____   Exp: _____   Location: _____
TB Skin Test – Results:  Positive _____   Negative _____   Size _____ mm  Date: _____   Read by: _____

| EXAM | Normal | Abnormal | Comments: |
|---|---|---|---|
| General | | | Healthy |
| HEENT | | | WNL |
| Thorax/Breast | | | Deferred |
| Lungs | | | CTA |
| Heart | | | RRR |
| Back | | | ROM WNL |
| Abdomen | | | Nontender |
| Extremities | | | ROM WNL |
| Skin | | | Hydrated |
| Mental Status | | | A&O x 3 |
| Cranial Nerves | | | Grossly intact |
| Motor/Gait | | | Ambulatory, slow gait |
| Sensory | | | Normal effect |

Provider Signature: M Cross LPN
                    MD, NP, PA-C, RN

Assessment / Treatment: _____  I concur.
                              I do not concur / specify: _____
Reviewer's Signature: _____   Date _____

4/3/21 1000  Called Dr. Kupferer about B/P. Dr. States inmate needs to be taken to E.R. for hypertensive emergency. EMS has been called to pick up inmate, E.R. at St. Josephs has been notified

ROMELL C. STEVENS #10572-025
Federal Correctional Institution 2
P.O. Box 1500
Butner, NC 27509



USPS
UNITED STATES
POSTAL SERVICE
1004     62812

U.S. POSTAGE PAID
PM
BUTNER, NC
27509
AUG 18, 22
AMOUNT
**$0.00**
R2309Y155299-09



**MAIL CLEARED
US MARSHALS**



EXPECTED DELIVERY DAY: 08/22/22

USPS TRACKING® #



9505 5127 2681 2230 4103 97

CLERK OF COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
U.S. COURTHOUSE
301 WEST MAIN STREET
BENTON, ILLINOIS 62812



RECEIVED

AUG 2 2 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON OFFICE