IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROMELL C. STEVENS, #10572-025,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 22-cv-01951-JPG |
| ) | |
| **BENNY VICK,** ) | |
| **WILLIAMSON COUNTY OFFICIALS,** ) | |
| **CHIEF FERRELL,** ) | |
| **DERICK BAKER,** ) | |
| **SERGEANT ETHERTON,** ) | |
| **SERGEANT CRAWSON,** ) | |
| **JOGENDRA CHHABRA,** ) | |
| **MARILYN ANN REYNOLDS,** ) | |
| **and CHIEF EXECUTIVE / OWNER** ) | |
| **OF HEALTH PROFESSIONALS, LTD.,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM & ORDER**

**GILBERT, District Judge:**

Plaintiff Romell Stevens, a former pretrial detainee at Williamson County Jail ("Jail"),[1] brings this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). In the Complaint, Plaintiff alleges that he was denied adequate treatment for several medical conditions at the Jail and suffered severe illness, prolonged pain, and long-term health consequences as a result. (*Id*. at 1-30). He seeks declaratory and monetary relief. (*Id*. at 8).

The Complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints and filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from a defendant who is immune from such relief

---

[1] Plaintiff is now an inmate in the Federal Bureau of Prisons and is housed at the Federal Correctional Institution in Butner, North Carolina.

1

must be dismissed.  28 U.S.C. § 1915A(b).  The allegations are liberally construed at this stage. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

In the Complaint, Plaintiff alleges that he was denied adequate medical care during his pretrial detention at Williamson County Jail from May 7, 2020 to April 1, 2021.  (Doc. 1, pp. 1-30).  Prior to his detention, Plaintiff was diagnosed with hypertension and prescribed medication for the condition, including Lisinopril (40 mg), Atorvastatin, and baby aspirin.  Plaintiff informed Dr. Chhabra and Nurse Reynolds about his diagnosis and treatment during the Jail's health intake screening on May 7, 2020.  Without explanation, they reduced his Lisinopril to 20 milligrams and discontinued his other medications.  (*Id.*).

In June and July 2020, Plaintiff informed the medical department about a painful shoulder injury that included dislocations, torn ligaments, and torn tendons.  Dr. Chhabra agreed to order Plaintiff a shoulder sling but never actually provided one.  Dr. Chhabra and Nurse Reynolds withheld all other treatment for his shoulder.  Officer Baker, Sergeant Etherton, and Sergeant Crawson were aware of his condition and the physical and emotional distress it caused, but they took no action to address it.  Consequently, Plaintiff suffered from severe shoulder pain until his transfer from the Jail on April 1, 2021.  (*Id.*).

Meanwhile, Sheriff Vick and Chief Ferrell failed to implement proper safety protocols to protect inmates from the spread of COVID-19.  Inmates were given no masks, hand sanitizer, antibacterial soap, cleaning supplies, or social distancing guidelines.  As a result, Plaintiff contracted COVID-19 on December 4, 2020.[2]  (*Id.*).

---

[2] Plaintiff alleges that he tested positive for COVID-19, after Nurse Reynolds used a nasal swab to test him and other inmates without wearing a mask or gloves.  However, Plaintiff does not allege that the nurse's failure to wear a mask or gloves actually caused him to contract COVID-19.

Plaintiff's condition deteriorated rapidly in the ten days that followed his diagnosis. By December 10, 2020, Dr. Chhabra, Nurse Reynolds, Chief Ferrell, Sergeant Etherton, Sergeant Crawson, and Officer Baker were all aware of Plaintiff's severe illness, based on his complaints of muscle aches, persistent coughing, difficulty breathing, and severe headaches. As his condition worsened, he was treated with Tylenol and cold tablets. By December 13, 2020, he could not eat without vomiting and had blood in his urine. He was given a liquid diet and Gatorade. Nurse Reynolds informed Plaintiff that Heartland Hospital was not taking COVID-positive patients, but she agreed to test his urine. Plaintiff suspects that the nurse never contacted the hospital or tested his urine and asserts that her failure to treat his hypertension increased his risk of serious illness with COVID-19. (*Id.*).

When Plaintiff defecated on himself on December 15, 2020, he was finally permitted to leave his cell and shower for the first time since his diagnosis five days earlier. He used the phone to contact a family friend, who called the Jail to complain. The same day, Plaintiff was taken to the hospital emergency room, where he was diagnosed with COVID-19, double pneumonia, rhabdomyolysis,[3] severe hypertension, liver failure, kidney failure, and macrocytic anemia.[4] He also learned that his blood pressure was 200/165 and that treatment of COVID-19 with cold tablets only worsened his condition. (*Id.*).

---

[3] Rhabdomyolysis occurs when damaged muscle tissue releases proteins and electrolytes into the blood, a process that can damage the heart and kidneys and cause permanent injury or death. *See* https://www.cdc.gov/ (last visited Jan. 31, 2023). *See also Bova v. U.S. Bank, N.A.,* 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

[4] Macrocytic anemia is a blood disorder that occurs when bone marrow produces abnormally large red blood cells. *See* https://www.mayoclinic.org/ (last visited Jan. 31, 2023).

Upon his release from the hospital on December 22, 2020, several health conditions[5] were resolved, but others[6] persisted. Plaintiff was given orders for several prescription medications[7] and daily blood pressure checks for a week to ensure a smooth transition to the new medication. After returning to the Jail, all of these medications, other than Lisinopril (40 mg) and prednisone, were abruptly stopped. Nurse Reynolds did not take Plaintiff's blood pressure until the eighth day after his return and did not let him see the results. Although Plaintiff reported ongoing muscle weakness, dizziness, chest pain, and headaches to Nurse Reynolds, Plaintiff was given a top bunk assignment in a standard cell. For a week, Plaintiff slept on the floor to avoid falling from the top bunk due to his ongoing symptoms. He was finally moved to a medical cell and given a low bunk on January 30, 2021. (*Id.*).

Plaintiff filed grievances to complain about his inadequate medical treatment on January 4, 2021, and again on January 15, 2021. Both times, Dr. Chhabra, Nurse Reynolds, Sherriff Vick, and Chief Ferrell retaliated against him by isolating him in a suicide cell ("the hole") without access to phone calls or outside family contacts for five days. In fear of being sent to the "hole" a third time, Plaintiff refrained from filing additional medical complaints in 2021. (*Id.*).

This delay in medical treatment had devastating consequences. By the time he transferred from the Williamson County Jail to Jackson County Jail on April 1, 2021, Plaintiff was suffering "hypertensive emergency" and taken by ambulance to St. Joseph's Hospital, where he was treated for "stroke level" hypertension from April 3-7, 2021. This was in spite of Nurse Reynolds'

---

[5] Plaintiff identifies the following conditions that resolved during his hospitalization: acute hypoxemic respiratory failure, hypokalemia, elevated serum creatine levels, high troponin levels, acute kidney injuries, abdominal pain, and hyponatremia.
[6] Plaintiff was discharged with the following diagnoses: leukocytosis, hypocalcemia, hyperlipidemia, macrocytic anemia, muscle weakness, rhabdomyolysis, abnormal liver enzymes, pneumonia, essential hypertension, and COVD-19.
[7] Plaintiff's prescriptions at discharge included Lisinopril (40 mg), Atorvastatin, Clonidine HCL, Hydrochlorothiazide, and Metoprolol succinate (Toprol XL).

determination that his blood pressure was "fine" on the date of his transfer. Plaintiff has since been diagnosed with reduced kidney function,[8] diabetes, and an enlarged heart—three conditions that developed after his detention at Williamson County Jail. He points to Williamson County Official's, Sheriff Vick's, and Chief Ferrell's blind deference to Health Professional, Ltd. and its staff (Dr. Chhabra and Nurse Reynolds) for all medical decisions as a cause of his injuries. (*Id*.).

## Discussion

Based on the allegations, the Court finds it convenient to designate the following enumerated counts in the *pro se* Complaint:

**Count 1:** Fourteenth Amendment claim against Dr. Chhabra and Nurse Reynolds for denying Plaintiff adequate medical treatment for hypertension from May 7, 2020 until April 1, 2021.

**Count 2:** Fourteenth Amendment claim against Dr. Chhabra and Nurse Reynolds for denying Plaintiff treatment for his injured shoulder from June or July 2020 until April 1, 2021.

**Count 3:** Fourteenth Amendment claim against Officer Baker, Sergeant Etherton, and Sergeant Crawson for failing to intervene and demand treatment of Plaintiff's shoulder injury from June or July 2020 until April 1, 2021, despite Plaintiff's complaints of pain and injury.

**Count 4:** Fourteenth Amendment claim against Dr. Chhabra, Nurse Reynolds, Chief Ferrell, Sergeant Etherton, Sergeant Crawson, and Officer Baker for failing to ensure timely treatment of Plaintiff's COVID-19 and other medical conditions in December 2020.

**Count 5:** Fourteenth Amendment claim against Nurse Reynolds for failing to follow the discharge orders of Heartland Hospital's physician by administering regular blood pressure checks and prescription medications to Plaintiff after his release from the hospital on December 22, 2022.

**Count 6:** *Monell*-type claim against Sheriff Vick and Chief Ferrell for failing to implement policies and procedures to prevent the spread of COVID-19 in 2020, resulting in Plaintiff's illness with COVID-19 on December 4, 2020.

---

[8] Plaintiff states that his kidney function is 40% of regular function.

5

**Count 7:**   *Monell*-type claim against Williamson County officials, Sheriff Vick, and Chief Ferrell for the policy, custom, or practice of blindly deferring to the medical decisions of Health Professionals Limited employees, even when faced with Plaintiff's obvious adverse health consequences from the failure to treat his medical conditions.

**Count 8:**   First Amendment retaliation claim against Dr. Chhabra, Nurse Reynolds, Sherriff Vick, and Chief Ferrell for responding to Plaintiff's complaints and grievances about inadequate medical care on January 4, 2021 and January 15, 2021, by placing him in the "hole" as punishment to prevent further complaints.

**Count 9:**   Illinois state law claim for negligent or intentional infliction of emotional distress against Officer Baker, Sergeant Etherton, and Sergeant Crawson for failing to intervene and assist Plaintiff in securing appropriate medical care at the Jail.

**Any other claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[9]

### Counts 1 through 5

Because Plaintiff was a pretrial detainee during the relevant time period, his claims for inadequate medical care are governed by the Fourteenth Amendment. This amendment guards against all forms of punishment of a pretrial detainee without due process of law. *Bell v. Wolfish*, 441 U.S. 520 (1979). Under the Fourteenth Amendment Due Process Clause, a district court presented with a claim of inadequate medical care considers, first, whether the "defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of plaintiff's case." *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018) (internal quotations and citations omitted). The court next considers "whether the challenged conduct was objectively reasonable" given the totality of circumstances faced by each defendant. *Id.* (*Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018)).

---

[9] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When applied to non-medical staff, the standard is slightly different. Courts have "long recognized" that correctional institutions must divide labor between medical and non-medical staff. *McGee v. Parsano*, 55 F.4th 563, 569 (7th Cir. 2022) (citing *Miranda*, 900 F.3d at 343). "When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention." *Id*. Therefore, "the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses . . . without fear of liability for doing so." *McGee*, 55 F.4th at 569 (quoting *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)). Still, this does not mean that non-medical staff can simply turn a blind eye to an inmate's deprivation of medical care. An exception to this general rule exists where non-medical personnel "had reason to know that the[ ] medical staff w[as] failing to treat or inadequately treating an inmate." *Id*. at 569 (quoting *Miranda*, 900 F.3d at 343). Plaintiff alleges that non-medical staff knowingly responded to his complaints about his untreated medical conditions with blind deference to the medical staff and inaction.

The allegations suggest that each of the medical and non-medical defendants named in connection with Counts 1 through 5 acted purposefully or knowingly when they denied Plaintiff medical care for his hypertension (Count 1), shoulder injury (Counts 2 and 3), COVID-19 and other conditions (Counts 4 and 5) and that their response was objectively unreasonable. Accordingly, Counts 1 through 5 shall receive further review against the defendants named in connection with each claim.

### Counts 6 and 7

Plaintiff attempts to bring two *Monell*-type claims in Counts 6 and 7. In *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978), the Supreme Court held that a

municipality can be liable under § 1983 if a municipal policy or custom gave rise to or caused a constitutional harm. *Id*. However, it cannot be held liable under a theory of *respondeat superior* liability for the misconduct of its employees. *Id*. *Monell* liability extends to private medical corporations that are contracted to provide medical services for inmates. *See Shields v. Illinois Dep't of Corrections*, 746 F.3d 782 (7th Cir. 2014). When presented with a *Monell*-type claim, the key question is whether the municipal/corporate policy or custom caused the harm or whether the harm resulted from the misconduct of the entity's agents. *Bradley v. Village of University Park, Ill.*, 929 F.3d 875 (7th Cir. 2019) (citing *Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). In the *Monell* context, Section 1983 liability only arises from the former. *Bradley*, 929 F.3d at 884 (citing *Monell*, 436 U.S. at 691). This "official policy" requirement distinguishes acts of the municipality or corporation from acts of individual employees and limits liability to instances when constitutional harm is caused by the municipality or corporation. *Id*. (citing *Pembaur v. City of Cincinnati*, 475 U.S. 468, 479-80 (1986)). The official policy requirement is satisfied by showing that the action alleged to be unconstitutional resulted from the implementation or execution of an official policy, custom, practice, or a series of bad acts. *Id*.

In Count 6, Plaintiff asserts a claim against Sheriff Vick and Chief Ferrell for failing to implement policies and procedures to prevent the spread of COVID-19 in 2020, which he says caused his illness with COVID-19. However, Plaintiff names no municipal or corporate defendant in connection with this *Monell*-type claim, and Sheriff Vick and Chief Ferrell are not named in their official capacities. Having failed to attribute any policy, custom, or practice to a person with policy-making authority, the allegations fall short of stating any claim for relief against either defendant. Count 6 shall thus be dismissed without prejudice.

Count 7 is undeveloped. Plaintiff asserts this claim against Williamson County Officials, Sheriff Vick, and Chief Ferrell for the policy, custom, or practice of blind deference to the medical decisions of the Jail's private medical contractor, *i.e.*, Health Professionals, Ltd., and its staff, *i.e.*, Dr. Chhabra and Nurse Reynolds. He names none of these defendants in their official capacities, and it is otherwise unclear whether he intends to bring this claim against the municipality, the private medical corporation, or the individuals. He also offers vague allegations in support of this claim, making it difficult to discern whether he complains of an official policy, informal custom, or widespread practice and by whom. Accordingly, Count 7 shall be dismissed without prejudice for failure to state a claim.

## Count 8

Plaintiff claims that he was placed in the "hole" for five days in retaliation for filing grievances about his inadequate medical care on January 4, 2021 and January 15, 2021. (Doc. 1). Under the First Amendment, an inmate has a right to file grievances and lawsuits to complain about the conditions of his confinement. *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). An inmate bringing a retaliation claim must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future constitutionally protected activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation. *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). Plaintiff has articulated a claim of retaliation against Dr. Chhabra, Nurse Reynolds, Sherriff Vick, and Chief Ferrell for responding to his medical complaints by punishing him with segregation in the "hole."

**Count 9**

Finally, Plaintiff claims that the denial of medical care caused him to suffer the negligent or intentional infliction of emotional distress in violation of Illinois state law.  To state a claim for negligent infliction of emotional distress, a plaintiff must show that: (1) defendants owed him a duty; (2) defendants breached that duty; and (3) plaintiff's injury was proximately caused by that breach.  *Roehl v. Merrilees*, 2012 WL 1192093 (N.D. Ill. 2012) (citing *Howell v. Jofe*, 483 F. Supp. 2d 659, 667 (N.D. Ill. 2007) (citing *Parks v. Kownacki*, 193 Ill.2d 164, 737 N.E. 287, 297 (Ill. 2000)).  And, in order to proceed on a claim of intention emotional distress, Plaintiff he must show that the defendants acted in an extreme and outrageous way, intended to inflict severe emotional distress or knew of the high probability that it would occur, and caused the plaintiff to suffer from severe emotional distress.  *See Doe v. Calumet City*, 641 N.E.2d 498, 506-07 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)).

Plaintiff has made no such showing.  Plaintiff maintains that he suffered from emotional distress and mental anguish during his detention at the Jail, but he does not address the elements of this claim against the defendants.  He also relies on a bald assertion of emotional distress to support his claim.  *Ashcroft v. Iqbal*, 556 U.S.C. 662, 678 (2009); Fed. R. Civ. P. 8.  Plaintiff does not describe this emotional distress in any detail.  He offers no indication that he was diagnosed with or treated for any symptoms of emotional distress or mental illness resulting from or exacerbated by the defendants' misconduct.  Accordingly, Count 9 shall be dismissed without prejudice for failure to state a claim.

**Disposition**

**IT IS ORDERED** that the Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A against the following defendants, in their individual capacities:

10

- **COUNTS 1** and **2** will proceed under the Fourteenth Amendment Due Process Clause against Defendants **CHHABRA** and **REYNOLDS**;

- **COUNT 3** will proceed under the Fourteenth Amendment Due Process Clause against Defendants **BAKER, ETHERTON,** and **CRAWSON**;

- **COUNT 4** will proceed under the Fourteenth Amendment Due Process Clause against Defendants **CHHABRA, REYNOLDS, FERRELL, ETHERTON, CRAWSON,** and **BAKER**;

- **COUNT 5** will proceed under the Fourteenth Amendment Due Process Clause against Defendants **REYNOLDS**; and

- **COUNT 8** will proceed under the First Amendment against Defendants **CHHABRA, REYNOLDS, VICK,** and **FERRELL**.

**IT IS ORDERED** that **COUNTS 6, 7,** and **9** are **DISMISSED** without prejudice against **ALL DEFENDANTS** named in connection with each claim for failure to state a claim upon which relief may be granted against them.

**The Clerk of Court is DIRECTED to TERMINATE Defendants WILLIAMSON COUNTY OFFICIALS and HEALTH PROFESSIONALS, LTD. CHIEF EXECUTIVE/OWNER as parties in CM/ECF and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

With regard to **COUNTS 1, 2, 3, 4, 5,** and **8**, the Clerk of Court shall prepare for Defendants **MARILYN ANN REYNOLDS, JOGENDRA CHHABRA, BENNY VICK, CHIEF FERRELL, DERICK BAKER, SERGEANT ETHERTON,** and **SERGEANT CRAWSON** (individual capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms

11

were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made for leave to proceed without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  **Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.**  See FED. R. CIV. P. 41(b).

    IT IS SO ORDERED.

    DATED: 2/2/2023

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**

### Notice

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint.  After service has been achieved, the defendants will enter their appearance and file an Answer to your complaint.  It will likely take at least 60 days from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take 90 days or more.  When all of the defendants have filed answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give the defendants notice and an opportunity to respond to those motions.  Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.